SPRING 1811.
First District.

TERRITORY
*vs.*
Mc FARLANE.

———— ❖ ————

## TERRITORY vs. McFARLANE.

*By the Court.* The prisoner has been found guilty of murder of the second degree, and we are now moved to arrest the judgment on the following grounds :

1st. That the caption does not contain the day or term on which the indictment was found.

2. That the words *vi et armis* are not in the indictment.

3. That the indictment is inconsistent and re-pugnant.

4. That the offence is not described in the words of the statute.

I. In support of the first ground, the counsel for the prisoner has cited 2 *Hawkins*, 362. *c.* 35, *s.* 127. " The caption must set forth a certain day and year, when the Court was holden."

WE are of opinion that the caption, of which *Hawkins* speaks here, makes no part of the indictment. The caption is the inception of the record, both in civil and criminal suits ; it is that part of it which precedes the declaration or in-dictment.

*Hawkins* and *Bacon* after him, so consider the

The caption is not a part of the indictment

The words *vi et armis*, not necessary in an indictment for murder.

SPRING 1811.
First District.

TERRITORY
*vs.*
MC FARLANE.

caption and the indictment : for they treat of the former separately, and after having treated of the latter. And *Blackstone*, in the record, in the appendix to the last volume of the commentaries, clearly distinguishes the indictment from the caption.

*Hawkins* cites as a necessary, nay essential, part of the caption, that it should contain the name sof the jurors, or at least it should expressly appear that they were at least twelve in number : circumstances which are never found in any form of indictment.

*Foster* also impliedly admits that the caption and indictment are distinct things : for he informs us that the prisoner is to be furnished with copies of both. *Foster's C. L.* 229.

SIR *Mathew Hale* puts this question, however, out of all doubt. Touching the forms of indictments, says he, there are two things considerable : 1st, the caption of the indictment ; 2d, the indictment itself.

THE caption of the indictment, is no part of the indictment itself; but it is the style or preamble on the return that is made from an inferior to a superior court from whence a certiorari issues to remove : or when the whole record is made up in form. Whereas the record of the indictment, as it stands upon the file in the court, wherein it is taken, is only thus : *Juratores pro domino rege &c.* When it comes to be return-

ed upon a certiorari, it is more full and explicit, *Norff. Ad generalem sessionem &c.* 2 *Hale's P. C.* 65.

II. THE omission of the words *vi et armis* is the second ground. The counsel rely on 2 *Hale,* 187. " In all indictments for felony, there must be *felonice,* so it must be laid to be done *vi et armis,* at common law. He cites *Stamf. P. C.* 94. *a.*

*Hawkins* does not speak in so unqualified a manner. " It is taken for granted in some books, " that they, (these words) were necessary at " common law, in all indictments for offences " which amount to an actual breach of the peace, " as rescouses, assaults and the like : yet I do not " find that they were ever necessary in such in- " dictments, wherein it would seem absurd to " put them in, as in indictments for conspira- " cies, cheats, slander and such like, or nui- " sances committed in a man's own ground. 2 *Hawkins.* 343 *s.* 90.

THESE words, however, are no longer held necessary, according to most English writers, since the statute of 37 *H.* 8 *c.* 8. The preamble of this statute recites that " in all indictments of " felony and trespass, and divers others, it was " common to declare the manner of the force and " arms, that is to say, *vi et armis,* viz, *baculis* " *arcubus et sagittis,* or other such like words ; " where in truth the parties had no such weapons " at the time of the offence, yet for lack of such

"words, the said indictments were taken as "void, and had been avoided by writ of error "and plea, &c." The statute then proceeds to declare these words unessential.

It is to be observed that the statute informs us, that the insertion of these words was *common*, not *universal*.

Since the statute, lawyers have been found who contend, and courts have often determined, that the statute in the enacting part, did not refer to the words *vi et armis*, but only to those which follow, viz, *baculis, sagittis et arcubus*, or such like, which *declare the* MANNER *of the force and arms*, and that the omission of the words *vi et armis*, is not helped by the statute. 2 *Hawk. P. C.* 94. 2 *Levinz*, 261. 1 *Siderfine*, 140. 1 *Bulstrode*, 205. 1 *Levinz*, 206. 1 *Keble*, 101. 2 *Keble*, 154. *Popham*, 206. Yet among some of these, the opinion prevails, that neither at common law nor at present, were the words *vi et armis* essential, where they are implied by others as *rescussit ro manu forti. Croke J.* 345. 2 *Bulstr.* 208. In an indictment for a riot the words *vi et armis* are implied in the words *riotose cesserunt, fregerunt, prostaverunt.* 2 *Hawkins*, 344 *c.* 25 *sec.* 91. in margin. 2 *Strange*, 834.

It has been adjudged that the words *vi et armis*, are not necessary in an appeal of death, because they are so fully implied. *Smith* and *Boden, Mich* 7. *Ann.* 8. tho' if the killing were with a

weapon, the count must shew with what particu-
lar weapon ; and if it were not by any weapon, but by some other means, as by poisoning, drown-
ing, suffocating, or the like, the circumstances of the fact must be set forth, as specially as the nature of it will admit.

In the present case, the indictment describing the weapon, with which the mortal wound was given, we think *the manner of the force and arms*, being *particularly* declared, it was not necessary that the *force and arms*, should be *generally* expressed. *Vi et armis* implied in murder. 1 *East* 346.

III. As to the repugnancy. The indictment sets forth, that the prisoner and one Byrns, on the 6th of April, assaulted the deceased, that Byrns gave the mortal blow, that the deceased languished till the 10th, when he died, that the prisoner was then and there abetting Byrns, and concludes that the prisoner and Byrns murdered the deceased.

It is contended that there is here a fatal repugnancy. The words, then and there, referring to neither of the periods previously mentioned in particular : and if the reference is to be made according to the ordinary rule of the construction, to the last antecedent, it relates to the time of the death, and not to that of the stroke.

*Hawkins* is again invoked. " An indictment " of death, laying the stroke at *A.* and the death

Ff

" at *B.* or the stroke on the 1st of May, and " the death on the 10th, is insufficient for the re- " pugnancy.....because it supposes the murder to " have been committed at a place in the first " case and on a day in the second, in which it ap- " pears, by the indictment itself, that the party " was not killed, but only wounded." 2 *Hawk.* *P. C.* 325 *c.* 25. *s.* 62.

IF in the present case, instead of the words *then and there*, the words *on the 6th of April*, had been substituted, the cases would have been parallel. But we find one similar to that of the prisoner, in 2 *Hawkins*, 264. *c.* 23 *s.* 89.

" WHERE it is alledged that the principal such " a day, made the assault and gave the stroke " and that the party died on such a subsequent " day, and that *A. B.* was *adtunc et ibidem abet-* " *tans*.....the words *adtunc et ibidem*, from the " manifest import of the whole, shall be refer- " red to the time of the stroke.....Yet, if *A. B.* " had been said to have been present, at the time " of the felony and murder aforesaid, viz : on " the day of the stroke, *tunc et ibidem*, abetting, " &c. it seems the appeal would be insufficient, " as to *A. B.* for the repugnancy."

IN the indictment under our consideration, the words, *then and there*, are not confined by any subsequent expression, to either of the antece- dent periods, so as to prevent their being ex- tended to both, and thus avoid the rupugnancy.

Iт does not appear to us that, even if the re- pugnancy existed, the part in which it is found, would necessarily be deemed material. The in- dictment begins by stating the joint felonious assault, refers to the mortal wound by one of the parties, the death, and finally charges both with murder, so that the clause, stating the presence of the prisoner specifically, is an useless one.

IV. It is objected that the indictment is insufficient in as much as it does not describe the offence in the words of the statute.

The indictment in this particular, is worded according to the common law forms, with the proper conclusion in statutory offences.

The first section of our act of May, 1805. *c.* 50, provides the punishment of death for the crime of *wilful murder*, the 22d section that of a fine and imprisonment at hard labour for that of *manslaughter.*

The act of July, 1805. *c.* 4. provides, " that " all murder which shall be perpetrated by " means of poison, or by laying in wait, or by any " other kind of wilful, deliberate or premedi- " tated killing, or which shall be committed in " the perpetration, or attempt to perpetrate, any " arson, robbery, or burglary, shall be deemed " murder of the first degree, and all other kinds " of murder, shall be deemed murder of the se- " cond degree.....and the jury shall ascertain in " their verdict, whether it be murder of the first " or second degree."

SPRING 1811.
First District.

MURDER of the first degree is punished with death, and murder of the second degree, with imprisonment at hard labour.

IN this case, the jury found the prisoner, not guilty of murder of the first degree, but guilty of murder of the second degree.

MURDER of the second degree is any kind of murder not enumerated in the first part of the section. The indictment charges the prisoner with wilful murder, with malice aforethought. Perhaps if it had simply charged him with murder, his counsel could not have successfully resisted the motion of the attorney general for judgment of imprisonment at hard labour.

MOTION OVERRULED,